UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTINE MEDLIN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 3:12-cv-00327 |
| v. ) | |
| ) | Judge Sharp |
| ENCORE MARKETING, LLC, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Encore Marketing, LLC's motion for partial summary judgment on Plaintiff Christine Medlin's copyright, breach-of-contract, and unjust-enrichment claims. (Docket No. 44). The parties have fully briefed the motion. (Docket Nos. 44-1, 48-2, & 53). For the reasons that follow, the Court GRANTS the motion. Encore also moves the Court to set a hearing on its motion for partial summary judgment. (Docket No. 45). As this Memorandum and accompanying Order resolve all of the issues Encore raises, the motion for oral argument is DISMISSED AS MOOT.

## BACKGROUND

Christine Medlin, a resident of Hermitage, Tennessee, worked as a National Sales Manager for Encore Marketing, LLC, an Ohio company that sells advertising space on rolls of receipt paper, benches, and shopping carts. (Docket No. 48-1 at 1). Medlin began working for Encore in December 2009 as an independent contractor and paid a commission based on the sales she made. (*Id*. at 1–2). In 2011, Medlin and Encore entered into a written contract that made Medlin eligible for a bonus—a 2012 Honda Accord valued at $29,385—if she met a

predetermined sales goal and several other terms the agreement spelled out. (*Id.* at 2; *see also* Docket No. 46-1 at 1–2 (bonus agreement)). One of those terms stated that if Medlin left Encore "before 12/31/2011 by either resigning or termination, no prize will be awarded" to her. (Docket No. 46-1 at 2). On October 27, 2011, Encore either terminated Medlin, or she resigned. (*See* Docket No. 46-2 at 2 & Docket No. 53-1 at 1).

Medlin sued Encore on April 2, 2012, for breach of contract, unjust enrichment, and violations of copyright law. She alleged that Encore breached its contract to pay her commissions, reimburse certain business expenses, and give her the Honda pursuant to the bonus agreement. (Docket No. 46-2 at 2–3). Medlin's unjust-enrichment claim sought reimbursement for funds she spent on "materials and services to promote and benefit" Encore, as well as payment of the bonus. (*Id.* at 3–4). The basis of Medlin's copyright claim is now irrelevant as she has stipulated to its dismissal. (Docket No. 48-2 at 3).

Medlin claims she is entitled to the bonus for two reasons. First, she says, she hit the predetermined sales goal. (Docket No. 48-1 at 4). (Encore disputes this, but it's not at issue in this motion.) Second, Medlin maintains that David Stemen, Encore's president and sole owner, orally modified the bonus agreement—specifically, by eliminating the employment-duration term that would otherwise make her ineligible for the Honda because she left Encore before December 31, 2011—in several conversations the two had before she left Encore. (Docket No. 48-1 at 4). At her deposition, Medlin explained these conversations as follows:

> Q: Let's go back to . . . the bonus agreement. You're saying . . . you're owed $30,000 for a car. And . . . the bonus agreement it says, "In the event the [sales representative] leaves the company before 12/31/2011 by either resigning or termination, no prize will be awarded to rep [sic]." We can agree that one of two things . . . happened. You either resigned, or you were terminated, correct?
>
> A: I would like to say there was a verbal addendum to that agreement that Dave told me as soon as I hit that sales number, he would buy me the car.

2

> Q: Okay. When did that conversation take place?
>
> A: Every single day for three months prior to my leaving, because every single day he called me, when are you going to win the car? When are you going to win the car? When are you going to win the car?
>
> Q: Do you have anything in writing to that effect?
>
> A: I am not sure. I'll have to go back and look.
>
> Q: Okay. Please, do. And do this, anything you find in that regard, give it to your attorney, and he and I will sort it out.
>
> A: Okay.
>
> Q: What about recordings? Do you have anything recording a conversation like that?
>
> A: No.

(Docket No. 46-3 at 61–62).

Encore's seeks partial summary judgment on two issues. First, it asks the Court to dismiss Medlin's copyright-infringement claim. (Docket No. 44-1 at 6–7). Medlin has already stipulated to its dismissal. (Docket No. 48-2 at 3). Second, Encore argues that the Court should to dismiss Medlin's breach-of-contract and unjust-enrichment claims as they pertain to the bonus because Medlin indisputably left Encore before December 31, 2011, and cannot show, as a matter of law, that Stemen changed the bonus agreement's employment-duration term. (Docket No. 53 at 3). Medlin responds that her deposition testimony shows that "Stemen communicated to her that as soon as she hit the sales number . . . he would buy her the car," and thus creates a genuine dispute of material fact as to whether Stemen orally modified the bonus agreement. (Docket No. 48-2 at 2–3).

## ANALYSIS

### I. Amount-in-controversy requirement

As a preliminary matter, the Court addresses Encore's contention that the Court lacks subject-matter jurisdiction because Medlin cannot satisfy the amount-in-controversy

3

requirement. (Docket No. 44-1 at 2–3; Docket No. 53 at 3–5). "Federal courts have original jurisdiction of all civil actions between citizens of different States when the amount in controversy exceeds $75,000." *Exact Software North Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013) (citing 28 U.S.C. § 1332(a)(1)) (internal quotation marks and ellipses omitted). A court, however, "must not dismiss an action for failure to meet the amount in controversy requirement unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992)).

Encore's contention that Medlin cannot satisfy the amount-in-controversy requirement to support the Court's jurisdiction is without merit. While Encore cherry picks an email Medlin sent in October 2011 indicating that Encore owed her $62,958.22, (Docket No. 53-1 at 1), other evidence shows that Medlin estimates that Encore owes her more than $75,000. For example, Medlin's complaint alleged damages of "more than $75,000.00," (Docket No. 46-2 at 1), and she later calculated her damages to be in excess of $106,000, (Docket No. 48-5 at 6). In short, the amount-in-controversy requirement is met here because Medlin alleged damages over $75,000 and there is at least an outside chance she could recover the amount claimed.

## II. Breach-of-contract claim

The summary-judgment standards that apply to Encore's motion are well-known, so the Court will not reiterate them here. *See* Fed. R. Civ. P. 56.

Under Ohio law,[1] a verbal agreement that alters or modifies the terms of a prior written contract must be a valid and binding contract itself. *Thurston v. Ludwig*, 6 Ohio St. 1, 6–7 (Ohio

---

[1] The parties fail to address which state's law applies to the interpretation of the bonus agreement. Absent any indication, the two options are Ohio, where Encore is incorporated and where its main office is located, (Docket No. 46-2 at 1; Docket No. 53-3 at 33), and Tennessee, where Medlin resides, (Docket No. 46-2 at 1). The Court will

4

requirement. (Docket No. 44-1 at 2–3; Docket No. 53 at 3–5). "Federal courts have original jurisdiction of all civil actions between citizens of different States when the amount in controversy exceeds $75,000." *Exact Software North Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013) (citing 28 U.S.C. § 1332(a)(1)) (internal quotation marks and ellipses omitted). A court, however, "must not dismiss an action for failure to meet the amount in controversy requirement unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992)).

Encore's contention that Medlin cannot satisfy the amount-in-controversy requirement to support the Court's jurisdiction is without merit. While Encore cherry picks an email Medlin sent in October 2011 indicating that Encore owed her $62,958.22, (Docket No. 53-1 at 1), other evidence shows that Medlin estimates that Encore owes her more than $75,000. For example, Medlin's complaint alleged damages of "more than $75,000.00," (Docket No. 46-2 at 1), and she later calculated her damages to be in excess of $106,000, (Docket No. 48-5 at 6). In short, the amount-in-controversy requirement is met here because Medlin alleged damages over $75,000 and there is at least an outside chance she could recover the amount claimed.

## II. Breach-of-contract claim

The summary-judgment standards that apply to Encore's motion are well-known, so the Court will not reiterate them here. *See* Fed. R. Civ. P. 56.

Under Ohio law,[1] a verbal agreement that alters or modifies the terms of a prior written contract must be a valid and binding contract itself. *Thurston v. Ludwig*, 6 Ohio St. 1, 6–7 (Ohio

---

[1] The parties fail to address which state's law applies to the interpretation of the bonus agreement. Absent any indication, the two options are Ohio, where Encore is incorporated and where its main office is located, (Docket No. 46-2 at 1; Docket No. 53-3 at 33), and Tennessee, where Medlin resides, (Docket No. 46-2 at 1). The Court will

4

1856).  Among other things, an essential element of a contract is a manifestation of mutual assent to its terms.  *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).  Assent is judged objectively, meaning that both acts and words are given the meaning that "a reasonable person present would ascribe to them in view of the surrounding circumstances."  *Nilavar v. Osborn*, 711 N.E.2d 726, 733 (Ohio Ct. App. 1998) (internal quotation marks omitted).  Moreover, as a contract "cannot be unilaterally modified," contracting parties must assent to a modification.  *Nagle Heating & Air Conditioning Co. v. Heskett*, 585 N.E.2d 866, 868 (Ohio Ct. App. 1990).

To ward off summary judgment, Medlin's insists that a factual issue exists as to whether Stemen orally jettisoned the term of the bonus agreement that required her to work for Encore through December 31, 2011.  The only evidence supporting that charge is Medlin's deposition testimony that Stemen "told" her she would get the Honda as soon as she hit the predetermined sales number by repeatedly asking Medlin, "When are you going to win the car?"  (Docket No. 46-3 at 62).

Construing this evidence most favorably for Medlin as the nonmoving party, the Court concludes that reasonable minds could not reach the conclusion that Stemen assented to a modification that eliminated the written bonus agreement's employment-duration term.  First, even if Stemen told Medlin that "as soon as [she] hit that sales number, he would buy [her] the car," this statement is unrelated to the requirement that Medlin still work for Encore on December 31, 2011.  At best, the "verbal addendum" Medlin alleges modified a different term in the agreement, which explained when the Honda would be delivered if the agreement's other terms were met.  (Docket No. 46-1 at 1 ("The car will be presented on 1/5/2012 with clear title . .

---

apply Ohio law but notes that the analysis would be unchanged if Tennessee law were to apply, since Tennessee requires the same elements to enforce a modification of a contract.  *See Signature Designs Grp., LLC v. Ramko*, No. M2011–01086–COA–R3–CV, 2012 WL 2519037, at *11 (Tenn. Ct. App. June 29, 2012).

5

. the winners.")). Medlin fails to create a genuine issue of material fact because changing the date the Honda would be delivered does not change the contract's employment-duration term.

Next, Medlin could not reasonably understand that Stemen's repeated questions to her—"When are you going to win the car?"—modified the bonus agreement's employment-duration term. Stemen's queries may have been in the spirit of dangling a carrot before Medlin to motivate her sales efforts, or they may have been intended instead to pressure Medlin to perform. But whatever their thrust, Stemen's questions were simply unrelated to whether or not Medlin had to maintain her employment with Encore to be eligible for the Honda. No reasonable factfinder could conclude that Stemen eliminated the contract's employment-duration requirement by repeatedly asking when Medlin would meet her sales goal.

Consequently, because Medlin presents no evidence that Encore agreed to eliminate the bonus agreement's employment-duration requirement, and because she indisputably did not comply with it, summary judgment is appropriate on Medlin's claim that Encore's failure to give her the Honda breached the bonus agreement.

## III. Unjust-enrichment claim

In Ohio,[2] unjust enrichment is a claim under quasi-contract law against a person in receipt of benefits that he is not justly and equitably entitled to retain. *Hummel v. Hummel*, 14 N.E.2d 923, 926 (Ohio 1938). The elements of an unjust-enrichment claim are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so

---

[2] As it pertains to the disposition of Medlin's claim, the elements of unjust-enrichment claims are materially similar in Tennessee and Ohio. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

without payment (unjust enrichment)." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (internal quotation marks omitted).

Medlin's unjust-enrichment claim, predicated as it is on Encore's refusal to give her the Honda, fails for the same basic reason as her breach-of-contract claim; namely, that the evidence she presents would not allow a reasonable factfinder to conclude that Medlin was entitled to the car based on the terms of the bonus agreement. As a consequence, Medlin cannot establish the third element of this claim because she cannot show that it would be unjust for Encore to retain the Honda. Summary judgment is appropriate on Medlin's claim that Encore's failure to give her the Honda unjustly enriched the company.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Encore's motion for partial summary judgment, (Docket No. 44), and DISMISSES AS MOOT Encore's motion for oral argument, (Docket No. 45). An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE